(No. 4866—

JIMMY CRAVEN, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 9, 1961.*

*Petition of Claimant for rehearing denied July 28, 1961.*

JOHN R. SNIVELY, Attorney for Claimant.

GRENVILLE BEARDSLEY, Attorney General; SAMUEL J. DOY, Assistant Attorney General, for Respondent.

TOLSON, C. J.

Jimmy Craven, a former inmate of the Illinois State Penitentiary at Joliet, Illinois, filed his complaint seeking an award for injuries received while working on a jointer, which was located in the woodworking shop.

The case was argued orally on April 21, 1961, and the Court, after examining the pleading briefs and Commissioner's Report, finds that the latter fairly states the facts, and arrives at the proper conclusion.

## The Court, therefore, adopts the Report of Commissioner Presbrey, which is set forth as follows:

"The evidence in the above entitled cause was heard and taken on December 4, 1959, in the City of Joliet, Illinois. John R. Snively represented claimant, Jimmy Craven, and Samuel J. Doy, Assistant Attorney General, represented respondent, State of Illinois.

"Claimant, Jimmy Craven, a former inmate of the Illinois State Penitentiary, has brought this action to recover alleged damages for personal injuries sustained by him while an inmate in the penitentiary. It appears that on February 15, 1957 claimant was assigned to the machine and maintenance shop in the penitentiary. Respondent contended that he was assigned to said duties after expressing an interest in such work, while claimant contends he was ordered to do work in the machine shop.

"On April 7, 1957, claimant was helping to make screens for the mess hall in the penitentiary. He was working in conjunction with two or three other inmates. While making said screens, claimant was using a jointer.

"A jointer is a woodworking machine. It is used primarily to smooth wood surfaces. The cutting operation is performed by knives set in a cylindrical shaped head, which in turn is powered by a motor. On each side of the knife is a steel table. These tables can be lowered or raised independently. Usually, when the machine is operated, the table nearest the operator is lowered as the board being surfaced is pushed through the cylindrical head the planed surface slides on the opposite table, which is in a raised position. A metal guard is positioned over the revolving cutting head and knives. It is held in place by a spring. Its normal position is over the cutter head. As the wood surface to be planed is pushed through the cutter head, it pushes back the guard in question. The spring maintains a tension on the guard so the knives are not exposed.

"As the board being planned by claimant was pushed over the cutter head, the guard swung away from its position over the cutter head due to the fact that the spring, which held the guard in place, was broken. The accident occurred on April 7, 1957. It appears that the spring in question was broken on the previous day while the machine was being operated by another inmate. The accident occurred on a Monday.

"It appears that, as claimant pushed the board to be surfaced over the cutter head, the end of the board being planed suddenly went down, thereby causing the other end to fly up. In one portion of his testimony claimant stated that, in attempting to grab said board, the little finger of his left hand came in contact with the cutter heads. In another portion of his testimony, he stated that as the end of the board went down, and he attempted to hold it in place, the little finger of his left hand and the middle finger of his left hand were injured.

"There is testimony that, in addition to the broken guard, the one table was in a lowered position rather than its normal raised position. Claimant stated that he did not know the machine was not properly adjusted until after the accident when he was told of this by one of the guards.

"As a result of the accident, claimant lost the distal joint of his little finger, and his middle finger was swollen. At the time of the accident claimant was 34 years of age. Prior to his imprisonment he had been a mason and cement finisher. He earned approximately $3.17 an hour. At the time of his hearing he was employed as a laborer, because he testified that he was unable to do cement work. He earned $2.88 an hour as a laborer. In the opinion of this Commissioner, this claim for damages should be denied. It appears that both claimant and respondent were guilty of negligence. Claimant was guilty of negligence in not seeing that the guard in question was in proper working order. It would also appear that, before an inmate is allowed to operate a machine, it should be inspected to see that it is adjusted properly. However, claimant was guilty of negligence in continuing to operate said machine when he discovered that the guard in question was not properly engaged. It is obvious that, when the board first struck the guard and pushed it aside, the machine should have been stopped until the guard was properly in place. It would also appear that claimant should have inspected the machine before attempting to operate it to determine if it was properly adjusted.

"It is rather curious that claimant did not discover that the far table was in a lowered position rather than in a raised position when he operated the gauges to determine the depth of his cut on the board in question. It would appear that claimant was guilty of contributory negligence, and that his claim should be denied."

An award is, therefore, denied.

## OPINION ON REHEARING

TOLSON, C. J.

On June 23, 1961, claimant filed a petition for a rehearing of this case, and, as grounds for same, suggests the following:

1. The common standards of safety by which the duty of the employer to the employee and the master to the servant is measured in private business or industry are applicable to the State.

2. Where the State is guilty of wilful and wanton misconduct, the defense of contributory negligence is not available to it.

3. The claimant was not guilty of contributory negligence.

As to point one, there is no dispute as to the rule of law that the State is held to the same standards in principle that apply under the Health and Safety Act (1959 Ill. Rev. Stats., Pars. 137.1 to 137.21).

In *Moore* vs. *State of Illinois*, 21 C.C.R. 282, this Court held that a convict was not an employee of the State, and, hence, is thereby prevented from maintaining

an action under the Health and Safety Act. Yet this Court would not create an anomaly by ruling that a food grinder, without a hopper, used by a private citizen is dangerous, while a similar grinder used by the State was not dangerous.

Claimant further argues that the defense of contributory negligence is not available, and cites the Moore Case, supra, as authority. As indicated in the opinion on page 290, respondent urged that claimant assumed the risk, and was guilty of contributory negligence. The Court held that neither defense was available in this case, but further stated "We do not, however, hold that such doctrines can never be asserted against a convict, but merely conclude that they do not apply in this case."

As to point two, there is no evidence of wilful and wanton misconduct by the State.

As to point three, claimant has the burden of proof of establishing that he was free from contributory negligence. Not only has he failed in this regard, but the evidence discloses that he was, in fact, guilty of contributory negligence.

The petition for rehearing is, therefore, denied.